UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:16-cr-00213-JMS-TAB |
| ) | |
| DIANGELO VALES, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Defendant Diangelo Vales filed a Motion to Suppress evidence that he contends was obtained during an unlawful search. [Filing No. 23.] After a hearing, the Court issued its Order denying that Motion on October 4, 2017. [Filing No. 42.] After conducting additional discovery, Mr. Vales has gathered evidence that he believes warrants reconsideration and a second hearing regarding his Motion to Suppress. Presently pending before the Court is Mr. Vales' Motion to Reconsider, [Filing No. 57], which is now fully briefed and ripe for the Court's review. For the reasons that follow, the Court **DENIES** Mr. Vales' Motion to Reconsider and his request for a hearing on the matter.

**I.**
**BACKGROUND**

Mr. Vales has been indicted with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). [Filing No. 1.] On June 5, 2017, Mr. Vales filed a Motion to Suppress evidence that he argued was obtained as the result of an unlawful search, as well as a statement that he contended was derivative of that search. [Filing No. 23.] On September 21, 2017, the Court held an evidentiary hearing on Mr. Vales' Motion to Suppress, during which the Court heard

1

testimony from Indianapolis Metropolitan Police Department ("IMPD") Officers Richard Faulkner, Trent Fortson, and Dane Elkins. [*See* Filing No. 45.]

**A. Factual Findings**

Following the suppression hearing, the Court found the following facts, as established by the testimonial and written evidence.

On May 14, 2016 at approximately 8:14 p.m., Officer Faulkner was driving his marked police vehicle behind Mr. Vales, who was driving northbound on Kenwood Avenue in Indianapolis, Indiana. [Filing No. 22-1 at 2.] While turning eastbound on 34th Street, Mr. Faulkner observed Mr. Vales disregard a stop sign. [Filing No. 22-1 at 2.] Officer Faulkner immediately initiated a traffic stop of Mr. Vales' vehicle. [Filing No. 22-1 at 2.] 34th Street contained three lanes of traffic moving eastbound, and Mr. Vales brought his vehicle to a stop in the southernmost open lane, next to a vehicle that was parallel parked adjacent to the curb.

Officer Faulkner approached the vehicle and asked Mr. Vales, who was the only occupant of the vehicle, for his driver's license. [Filing No. 22-1 at 2.] After receiving it, at approximately 8:16 p.m., Officer Faulkner requested Mr. Vales' driving record information using the laptop computer in his police vehicle. [Filing No. 22-1 at 2; Filing No. 22-2 at 2.] Officer Faulkner, via his laptop, received information that Mr. Vales had a suspended driver's license. Because Mr. Vales was the only occupant of the vehicle, had a suspended license, and the car was stopped in a lane of traffic (as opposed to legally parked), Officer Faulkner determined that the vehicle should be towed from the scene. At approximately 8:17 p.m., Officer Faulkner radioed for backup. [*See* Filing No. 22-2 at 2].

At approximately 8:18 p.m., backup Officer Trent Fortson arrived at the scene of the traffic stop, and Officer Faulkner advised Officer Fortson of the need to tow the vehicle. The officers

2

approached the vehicle and asked Mr. Vales to exit. Both officers testified that Mr. Vales became argumentative and initially would not exit the vehicle. When he did exit the vehicle, and remained argumentative, the officers placed him in handcuffs "for the safety" of both the officers and Mr. Vales. [Filing No. 22-1 at 2.] Officer Faulkner then commenced an inventory search of the vehicle, as required by IMPD policy, prior to the impoundment. [Filing No. 22-1 at 2.] During that search, Officer Faulkner discovered a loaded handgun in the console of the vehicle. [Filing No. 22-1 at 2.] At approximately 8:23 p.m., Officer Faulkner radioed for the assistance of a gun liaison officer. Officer Faulkner obtained a summary of Mr. Vales' criminal history and was informed that Mr. Vales did not have a valid handgun permit and had been previously convicted of a felony offense. Mr. Vales was placed under arrest for carrying a handgun without a license with a prior conviction and possession of a handgun by a serious violent felon, and the handgun was seized. [Filing No. 22-1 at 3.] Mr. Vales was read his *Miranda* rights and stated that he understood them. [Filing No. 22-1 at 3.] Mr. Vales knowingly waived those rights and voluntarily stated that the handgun belonged to him, and that he carried it for protection.

**B. Legal Conclusions**

In his Motion to Suppress, Mr. Vales argued that Officer Faulkner conducted a warrantless search of Mr. Vales' vehicle that was not permitted by any exception to the warrant requirement, such as a search incident to arrest or the search of a vehicle upon probable cause of a crime. He contended that Officer Faulkner characterized the search after the fact as an inventory search in order to prevent the exclusion of the evidence obtained. Mr. Vales pointed to two factors as being indicative of an improper search: (1) the timeline of events during the traffic stop; and (2) that impoundment was not necessary, because Mr. Vales could have called someone to assist in moving the vehicle.

3

As to the timeline, after considering and crediting Officer Faulkner's testimony, the Court concluded that there was nothing constitutionally infirm or pretextual about the timeline of events leading to the search of Mr. Vales' vehicle. [[Filing No. 42 at 5](#).] The Court also concluded that the objective evidence supported the conclusion that Officer Faulkner intended to tow the vehicle prior to conducting the search. [[Filing No. 42 at 6](#).] As to the propriety of impounding Mr. Vales' vehicle, the Court concluded that the decision to tow Mr. Vales' vehicle was reasonable and consistent with existing IMPD policies. [[Filing No. 42 at 6](#).] The Court accordingly denied Mr. Vales' Motion to Suppress. [[Filing No. 42](#).]

**C. Motion to Reconsider**

Following the Court's Order on the suppression motion, Mr. Vales conducted additional discovery and investigation regarding other traffic stops effected by Officer Faulkner. [*See* [Filing No. 54](#).] Mr. Vales contends that he uncovered evidence that undermines the Court's prior conclusions regarding the nature of the inventory search, and presently pending before the Court is Mr. Vales' Motion to Reconsider that Order, and a request for an evidentiary hearing. [[Filing No. 57](#).] That Motion is fully briefed and ripe for the Court's review.

## II.
### DISCUSSION

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures…." [U.S. Const. amend. IV](#). Generally, a warrantless search or seizure in the absence of probable cause is unreasonable. *[United States v. Slone](#)*, 636 F.3d 845, 848-49 (7th Cir. 2011). When police conduct an unreasonable search or seizure, the exclusionary rule usually vindicates the Fourth Amendment's protections by keeping out the unlawfully obtained evidence. *[Id.](#)* But, as the Court discussed in its prior Order, "[i]nventory searches are a recognized exception to the

4

warrant and probable-cause requirements of the Fourth Amendment. Searches conducted by the police prior to towing a car are lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property—and protecting the police from the owner's charging them with having stolen, lost, or damaged his property." *United States v. Cherry*, 436 F.3d 769, 772-73 (7th Cir. 2006) (internal citations and quotations omitted).

Mr. Vales argues that his newly-collected evidence casts doubt on Officer Faulkner's prior testimony. At the hearing, Officer Faulkner testified that he would choose to tow a vehicle when the following circumstances are present: (1) the driver is the owner of the vehicle; (2) the driver's license is suspended; and (3) the vehicle comes to a stop in a lane of traffic. [Filing No. 58 at 7.] Mr. Vales contends that this testimony is inaccurate, because on at least six occasions, despite the presence of those factors, Officer Faulkner elected not to tow the subject vehicles. [Filing No. 58 at 4-7.]

Mr. Vales argues that this new evidence undermines two conclusions: (1) that "the search of Mr. Vales' vehicle was conducted pursuant to standardized criteria or established routine," and (2) that Officer Faulkner had actually decided to tow Mr. Vales' vehicle prior to conducting the search. [Filing No. 58 at 7-8.] In response, the Government argues that whatever Officer Faulkner might have elected to do with other drivers, his decision to tow Mr. Vales' vehicle was consistent with IMPD's towing policy. [Filing No. 63 at 2.] The Government argues that the policy also makes towing discretionary, and that Officer Faulkner's election not to tow other motorists' vehicles does not constitute evidence of a pretextual search here. [Filing No. 63 at 3-5.]

**A. Standard Police Procedures**

The Court begins with Mr. Vales' argument regarding Officer Faulkner's compliance with standardized criteria or established routine.

5

"Searches conducted by the police prior to towing a car are lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property—and protecting the police from the owner's charging them with having stolen, lost, or damaged his property." *Cherry,* 436 F.3d at 772. An officer's discretion is required to be exercised "according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Colorado v. Bertine,* 479 U.S. 367, 373-74 (1987). Both the Supreme Court and the Seventh Circuit have made clear that the Fourth Amendment does not demand that "police offer a motorist an alternative means of removing his vehicle that will avoid the need to tow it and conduct an inventory search." *Cherry,* 436 F.3d at 775 (citing *Bertine*, 479 U.S. at 375 (police need not give motorist "an opportunity to make alternative arrangements" that avoid impoundment)).

As the Court described in its prior Order, Officer Faulkner complied with the written policies enumerated in IMPD General Order 7.3, regarding the towing and impounding of vehicles. The "Procedure" section of that written policy enumerates a list of vehicles that may be towed, including a vehicle that is "[c]ausing a traffic or other hazard," or that is "[b]eing operated by a non-licensed or suspended driver." [*See* Filing No. 22-4 at 3]. Mr. Vales does not dispute either that his vehicle posed a traffic hazard, or that it was operated by a suspended driver. Instead Mr. Vales appears to argue that because Officer Faulkner exercised his discretion not to tow vehicles on several other occasions, Officer Faulkner deviated from his own established routine in towing Mr. Vales' vehicle in this instance.

Based on the evidence presented, the Court cannot conclude that Officer Faulkner's decision to tow Mr. Vales' vehicle represented a departure from his "established routine." Officer Faulkner did not testify as to how many traffic stops he has conducted in which the driver is unlicensed, nor did Mr. Vales provide such evidence, but the Court can reasonably assume it is

more than six, given Officer Faulkner's two-year tenure, at the time of the stop, with the IMPD. In any event, the frequency of Officer Faulkner's decision to exercise his discretion not to tow does not alter the fact that he complied with the applicable IMPD tow policy in this instance. The Court concludes that Officer Faulkner exercised his discretion pursuant to standard criteria—the IMPD tow policy.

**B. Officer Faulkner's Subjective Motivation**

Mr. Vales also argues that his newly-uncovered evidence casts doubt on Officer Faulkner's prior testimony, and thereby raises a question as to Officer Faulkner's subjective motivation in conducting the search.

Typically, in the context of Fourth Amendment challenges, the reasonableness of a search does not depend on an officer's subjective motivations; instead the inquiry is objective, asking what a reasonable officer would have done under the circumstances. *See, e.g., U.S. v. Edwards,* 769 F.3d 509, 516 (7th Cir. 2014). However, the Supreme Court has indicated that there is some subjective component of the inventory search analysis—at least in cases where officers conducting an inventory search have no probable cause to believe that a crime has been committed. *See Whren v. United States,* 517 U.S. 806, 811 (1996) (citing *Florida v. Wells,* 495 U.S. 1, 4 (1990) (concluding that "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence") and *Colorado v. Bertine,* 479 U.S. 367, 372 (1987) (where the court "thought it significant that there had been no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation")).

Here, Mr. Vales argues that the newly-assembled evidence casts doubt on Officer Faulkner's subjective motivation to conduct the search. Mr. Vales contends that, while Officer Faulkner testified that he would invariably tow a vehicle when certain circumstances were present

7

(when (1) the driver is the owner of the vehicle; (2) the driver's license is suspended; and (3) the vehicle comes to a stop in a lane of traffic), the new evidence shows that on at least some occasions when those factors were present, he did not do so. On three occasions, he may have allowed the unlicensed driver to pull the vehicle into a safe parking area until someone could come to retrieve the vehicle. [Filing No. 58 at 3-5.] And on two (or maybe three) occasions, Officer Faulkner allowed the unlicensed driver to call a licensed driver to come take possession of the vehicle. [Filing No. 58 at 5-7.]

As the Court discussed above, the Court does not find the six exceptions listed by Mr. Vales to be statistically significant. And in any event, Mr. Vales has not shown that those interactions were factually similar to his own. In at least one of those encounters, the driver of the vehicle was permitted to call someone to come move the subject vehicle, provided they arrived before the tow truck, which had already been called. But here, after being told that the car would be towed, Mr. Vales became argumentative enough that Officer Faulkner felt the need to put him in handcuffs. [Filing No. 45 at 16-17 ("I asked him to step out of the vehicle. He became argumentative and asked why he needed to get out of the vehicle. I advised him that his license was suspended and that the vehicle needed to be towed. He continued to be argumentative. However, he got out of the vehicle at that time…because he was so argumentative and didn't initially get out of the vehicle we placed him into handcuffs.").] Perhaps because he was argumentative, or perhaps simply because he was handcuffed, Officer Faulkner did not offer Mr. Vales the option to call someone to retrieve the vehicle, as he had done with several other drivers. The Court does not conclude from this chain of events that Officer Faulkner was motivated by a prohibited factor, such as investigation of a crime, instead of a decision to comply with the IMPD tow policy.

Regardless, the Court's assessment of Officer Faulkner's credibility remains unchanged, as does its conclusion that the inventory search was reasonable under the circumstances present.

## III.
### CONCLUSION

For the reasons stated herein, the Court **DENIES** Mr. Vales' Motion to Reconsider its order on his Motion to Suppress and his request for a hearing. [57]

Date: 2/1/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

William H. Dazey, Jr.
INDIANA FEDERAL COMMUNITY DEFENDERS
bill.dazey@fd.org

Bradley Paul Shepard
UNITED STATES ATTORNEY'S OFFICE
brad.shepard@usdoj.gov